IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHELLEY R. GARNICK, TANAJAH      )
CLARK, and ZOE R. JONES,         )
individually and on behalf of    )
all others similarly situated,   )
                                 )
          Plaintiffs,            )
                                 )
     v.                          )       1:21CV454
                                 )
WAKE FOREST UNIVERSITY           )
BAPTIST MEDICAL CENTER, THE      )
BOARD OF DIRECTORS OF WAKE       )
FOREST UNIVERSITY BAPTIST        )
MEDICAL CENTER, THE              )
RETIREMENT BENEFIT COMMITTEE     )
OF WAKE FOREST UNIVERSITY        )
BAPTIST MEDICAL CENTER, and      )
JOHN DOES 1-30,                  )
                                 )
          Defendants.            )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is a Motion to Dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) filed by

Defendants Wake Forest University Baptist Medical Center, the

Board of Directors of Wake Forest University Baptist Medical

Center, the Retirement Benefit Committee of Wake Forest

University Baptist Medical Center, and John Does 1-30.

(Doc. 21.) For the reasons set forth herein, this court will

deny Defendants' Motion to Dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (internal quotation marks omitted) (quoting King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)). The facts, taken in the light most favorable to Plaintiffs, are as follows.

### A. Factual Background

Defendant Wake Forest University Baptist Medical Center ("Wake Forest"), an academic health system with over 2,500 physicians at more than 350 locations, sponsors a defined contribution retirement savings plan ("Plan") for eligible current and former employees. (Am. Compl. (Doc. 18) ¶¶ 24-25, 44-46.)[1] Wake Forest, through the Board of Directors of Wake Forest University Baptist Medical Center ("Board"), appointed the Retirement Benefit Committee of Wake Forest University Baptist Medical Center ("Committee") to select and monitor the investment options in the Plan and the Plan's recordkeeper. (Id. ¶¶ 26, 29, 32-33.)

The Plan allows participants to direct their retirement savings contributions into various investment fund options

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

-2-

offered by the Plan. (Id. ¶¶ 47–48, 54.) Since 2015, the Plan has "had at least 1.2 billion dollars in assets under management and 19 thousand participants," which "qualifies it as a jumbo plan in the defined contribution plan marketplace." (Id. ¶¶ 9–10.) There are several fees associated with operating the Plan, including fees for administrative services—such as recordkeeping—and investment management services. (Id. ¶ 70.) "[A]dministrative expenses were paid for using Plan assets." (Id. ¶ 56.)

Plaintiffs are former Plan participants. (Id. ¶¶ 19–21.) Each Plaintiff had previously invested in American Funds target date retirement funds in the R5 class. (Id.) Plaintiffs allege that since 2015, Defendants have been in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., by breaching their fiduciary duties of prudence and to monitor. (Id. ¶¶ 1 n.3, 121–34.) Plaintiffs' factual foundation for these claims rests on Defendants': (1) failure to offer investment options with cheaper investment management expenses; (2) failure to offer investment options with cheaper recordkeeping fees; and (3) failure to keep the Plan's total costs reasonable. (Id. ¶¶ 57–120.) Plaintiffs allege that "Defendants' mismanagement of the Plan . . . . cost the Plan and

its participants millions of dollars." (Id. ¶ 14.) These factual allegations are described in greater detail infra Part III.

## B.   **Procedural Background**

Plaintiffs filed a Complaint on June 4, 2021, (Compl. (Doc. 1)), and an Amended Complaint on October 28, 2021, (Am. Compl. (Doc. 18)). Plaintiffs assert two ERISA counts: (I) breach of the fiduciary duty of prudence; and (II) breach of the fiduciary duty to monitor. (Id. ¶¶ 121–34.) Defendants moved to dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), (Doc. 21), and filed a memorandum in support of their motion, (Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pls.' Am. Compl. ("Defs.' Br.") (Doc. 22)). Plaintiffs responded, (Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Pls.' Am. Compl. ("Pls.' Resp.") (Doc. 25)), and Defendants replied, (Reply in Supp. of Defs.' Mot. to Dismiss Pls.' Am. Compl. (Doc. 29)).[2]

---

[2] In addition to their briefing, Defendants submitted three Suggestions of Subsequently Decided Authority. (See Def.'s Sug. of Sub. Decided Auth (Doc. 30); Def.'s Sug. of Sub. Decided Auth (Doc. 31); Def.'s Sug. of Sub. Decided Auth (Doc. 32).) Plaintiffs also submitted a Suggestion of Subsequently Decided Authority (See Pl.'s Sug. Sub. Decided Auth. (Doc. 33).) This court has reviewed these decisions and finds none are binding on this court. To the extent that they suggest a different outcome should be reached in this case, this court is more persuaded by the decisions cited in this Memorandum and Order.

-4-

## II.  STANDARD OF REVIEW

### A.  Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. See U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347–48 (4th Cir. 2009). A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed in two ways: either by a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting that "the jurisdictional allegations of the complaint [are] not true." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (alteration in original) (internal quotation marks omitted) (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). When a "defendant challenges the factual predicate of subject matter jurisdiction, '[a] trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations,' without converting the motion to a summary judgment proceeding." Id. (alteration in original) (quoting Adams, 697 F.2d at 1219). In a factual challenge to subject

-5-

matter jurisdiction, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." Id.

However, "where the jurisdictional facts are intertwined with the facts central to the merits of the dispute, a presumption of truthfulness should attach to the plaintiff's allegations" because "the defendant has challenged not only the court's jurisdiction but also the existence of the plaintiff's cause of action." Id. at 193 (internal quotation marks omitted); see also Al Shimari v. CACI Premier Tech., Inc., 758 F.3d 516, 531–32 (4th Cir. 2014). In those situations, the plaintiff should be afforded the opportunity to conduct discovery. See Kerns, 585 F.3d at 192–93. In short, "unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous," district courts "should resolve the relevant factual disputes only after appropriate discovery." Id. at 193.

## B. Federal Rule of Civil Procedure 12(b)(6)

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim

-6-

is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Id. When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. See id. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom . . . in the plaintiff's favor." Est. of Williams-Moore v. All. One Receivables Mgmt., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). However, this court does not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## III. **ANALYSIS**

Plaintiffs' Complaint contains two counts. The first count alleges a claim for breach of fiduciary duty of prudence, and the second count alleges a claim for failure to monitor fiduciaries and co-fiduciary breaches. (Am. Compl. (Doc. 18) ¶¶ 121-34.) On the first count, Plaintiffs allege that Defendants breached their fiduciary duty of prudence because (1) the Plan's investment management fees were excessive; (2) the Plan's recordkeeping costs were excessive; and (3) the Plan's

total costs were unreasonable. (Id. ¶¶ 70–120.) On the second count, Plaintiffs allege that Defendants breached their fiduciary duty to monitor the committee due to a lack of performance evaluations, resulting in losses to plan participants. (Id. ¶¶ 128–34.)

### A.    Count I: Breach of Fiduciary Duty of Prudence

Defendants move to dismiss Plaintiffs' investment management expenses allegations for lack of subject matter jurisdiction, arguing that Plaintiffs do not have standing because they have not shown they suffered an injury by investing in the R5 class rather than the R6 class and that Plaintiffs cannot show they were injured by Defendants' management of funds in which Plaintiffs did not invest. (Defs.' Br. (Doc. 22) at 15–23.) Defendants have also moved to dismiss Plaintiffs' recordkeeping fees allegations: first, for lack of subject matter jurisdiction, arguing Plaintiffs fail to show they were injured by being charged recordkeeping fees, and second, for failure to plausibly allege imprudence. (Id. at 23–29.) Defendants further move to dismiss Plaintiffs' excessive total plan cost allegations for failure to plausibly allege imprudence. (Id. at 30.)

### 1. **Excessive Investment Management Expenses**

Defendants argue Plaintiffs' investment management expenses allegations should be dismissed because Plaintiffs fail to allege injury, and therefore lack Article III standing. (See id. at 15–23.) If a plaintiff does not have standing, the matter before the court is not a "case or controversy," as required by Article III of the Constitution of the United States for subject matter to exist. See Finlator v. Powers, 902 F.2d 1158, 1160 (4th Cir. 1990).

To have standing, Plaintiffs must show they have suffered an injury-in-fact. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992); David v. Alphin, 704 F.3d 327, 333 (4th Cir. 2013). To establish Defendants' liability for breach of the fiduciary duty of prudence by incurring excessive investment management fees, Plaintiffs must show: "(1) the Plan was an employee benefit plan under ERISA; (2) the Defendants were fiduciaries of the Plan; and (3) the Defendants breached their duties under ERISA, resulting in losses to the Plan." Acosta v. Calderon, Civil Action No. ADC-16-0964, 2017 WL 4011962, at *4 (D. Md. Sept. 11, 2017).

Defendants attempt to show Plaintiffs have suffered no injury in investment management expenses through several exhibits, including the R5 and R6 classes' prospectus and the

-9-

Plan's services agreement. (Defs.' Br. (Doc. 22) at 16–17.)
Defendants also argue Plaintiffs cannot show injury by comparing
"the American Funds TDF's investment management expenses" to the
"median or average expenses for funds in other plans." (Id. at
18–19 (internal quotation marks omitted).) These documents
relied on by Defendants in challenging Plaintiffs' standing will
likely be relevant to proving whether Plaintiffs in fact
received a loss through investment in the R5 class over the R6
class. Thus, whether Plaintiffs suffered an injury-in-fact is
intertwined with the merits of Plaintiffs' breach of the
fiduciary duty of prudence claim; if, as Defendants contend,
"Plaintiffs did not pay more by investing in the R5 share
class," (Defs.' Br. (Doc. 22) at 15), then Plaintiffs also
cannot satisfy an element of their breach of fiduciary duty of
prudence claim as related to investment management expenses.
Because the issue of whether Plaintiffs paid more by investing
in the R5 share class over the R6 share class is determinative
of both jurisdiction and the underlying merits of the breach of
fiduciary duty of prudence claim, dismissal under Rule 12(b)(1)
is inappropriate. See Kerns, 585 F.3d at 195; Bell v. Hood, 327
U.S. 678, 682 (1946); Vuyyuru, 555 F.3d at 348.

This court finds Plaintiffs should be afforded an
opportunity to conduct discovery on the intertwined issue of

-10-

whether Plaintiffs suffered a loss by investing in the R5 versus the R6 share class. "[D]efendant[s] ha[ve] challenged not only the court's jurisdiction but also the existence of the plaintiff's cause of action." Kerns, 585 F.3d at 193. Notably, Defendants do not challenge the plausibility of Plaintiffs' investment management expenses allegations under Rule 12(b)(6). (See Defs.' Br. (Doc. 22) at 15-23.) Accordingly, the parties may move forward with discovery on not only the jurisdictional issue but the underlying claim as well.[3]

## 2. **Excessive Recordkeeping Fees**

Defendants also move to dismiss Plaintiffs' recordkeeping fees allegations for lack of standing and for failure to state a claim. (Id. at 23-29.) This court will first address whether Plaintiffs have standing and then address whether Plaintiffs have stated a claim.

---

[3] Defendants also challenge Plaintiffs' standing to assert investment management expenses allegations for funds in which Plaintiffs did not invest. "However, courts have recognized that a plaintiff who is injured in his or her own plan assets—and thus has Article III standing—may proceed under § 1132(a)(2) on behalf of the plan or other participants even if the relief sought 'sweeps beyond his own injury.'" Clark v. Duke Univ., 1:16-CV-1044, 2018 WL 1801946, at *4 (M.D.N.C. Apr. 13, 2018) (quoting Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 593 (8th Cir. 2009)). Because this court will deny Defendants' motion to dismiss Plaintiffs' investment management expenses claim for lack of standing to allow Plaintiffs an opportunity to conduct discovery since the issues of jurisdiction are intertwined with the underlying merits, this court finds Defendants' argument regarding funds Plaintiff did not invest in unpersuasive at this juncture in the proceedings.

-11-

###### a. **Standing**

Defendants argue Plaintiffs lack standing to challenge recordkeeping fees because Plaintiffs have alleged "no facts regarding the amount of recordkeeping fees that these Plaintiffs personally paid." (Id. at 24)(emphasis omitted). Plaintiffs allege that "the Plan was paying" "more than $141 per participant" in 2015, "$155 per participant" in 2016, and over $110 per participant in administrative and recordkeeping costs in 2019," (Am. Compl. (Doc. 18) ¶ 109.) Plaintiffs also allege that the Plan, due to its number of participants and assets, had the leverage to negotiate much cheaper recordkeeping costs. (Id. ¶¶ 114-17.)

Defendants argue that, contrary to those allegations, Plaintiffs did not pay excessive recordkeeping fees, and therefore have no injury, because applying the alleged recordkeeping fees to Plaintiffs' balances, none of the named Plaintiffs paid recordkeeping fees near $110. (See Defs.' Br. (Doc. 22) at 24.)

Like Defendants' argument related to investment management expenses, see supra Section III.A.1, this court finds that Defendants' jurisdictional challenge to Plaintiffs' recordkeeping fee allegations is "intertwined with the facts central to the merits of the dispute." Adams, 697 F.2d at 1219.

-12-

The evidence relied on by Defendants to show a lack of injury-in-fact will likely be the same evidence used to attack the merits of Plaintiffs' underlying excessive recordkeeping fee allegations.[4]

In sum, because of the significant overlap between the jurisdictional issues and the merits of Plaintiffs' allegations, this court finds that Plaintiffs should be afforded the opportunity to conduct discovery before ruling on subject matter jurisdiction. See Kerns, 585 F.3d at 192-93. Plaintiffs' allegations are not "clearly immaterial or wholly unsubstantial and frivolous" to the jurisdictional issue, so this court will wait to address "the relevant factual disputes only after appropriate discovery." Id. at 193. Defendants' Motion to Dismiss Plaintiffs' investment management expenses and

---

[4] Defendants also argue that Plaintiffs do not have standing to challenge TIAA's recordkeeping fees because named Plaintiffs did not use TIAA as a recordkeeper; they used TransAmerica. (Defs.' Br. (Doc. 22) at 23-24.) Because this court will deny Defendants' Motion to Dismiss Plaintiffs' recordkeeping fees to allow the parties to conduct discovery on the jurisdictional issues, this court finds this argument unpersuasive at this juncture. If, through discovery, Plaintiffs are able to establish an injury to themselves because of Defendants' recordkeeping fees, then Plaintiffs will have standing to sue on behalf of Plan participants who used a different recordkeeper than named Plaintiffs. "Courts have recognized that a plaintiff with Article III standing may proceed under § 1132(a)(2) on behalf of the plan or other participants." Braden, 588 F.3d at 593. Defendants have not persuaded this court that the rationale in Braden would not also apply to a plaintiff proceeding on behalf of participants in the same plan but with a different recordkeeper.

-13-

recordkeeping fees allegations pursuant to Rule 12(b)(1) will be denied.

### b. <u>Failure to State a Claim</u>

Plaintiffs allege that Defendants breached their fiduciary duty of prudence by charging excessive and imprudent recordkeeping and administrative fees. (Am. Compl. (Doc. 18) at ¶¶ 94-120.) Defendants move to dismiss, arguing that Plaintiffs' comparisons to other plans' recordkeeping fees do not plausibly suggest imprudence. (Defs.' Br. (Doc. 22) at 25-29.)

"In order to allege a breach of fiduciary duty under ERISA, Plaintiffs must show that: (1) the Plan is governed by ERISA; (2) Defendants were fiduciaries of the Plan; and (3) Defendants breached their duties of prudence and/or loyalty under ERISA, resulting in losses to the participants of the Plan." <u>Jones v. Coca-Cola Consol., Inc.</u>, DOCKET NO. 3:20-cv-00654-FDW-DSC, 2021 WL 1226551, at *4 (W.D.N.C. Mar. 31, 2021). "A plaintiff raising an excessive fee claim under ERISA must allege 'that fees were excessive related to the services rendered.'" <u>Kendall v. Pharm. Prod. Dev., LLC</u>, No. 7:20-CV-71-D, 2021 WL 1231415, at *11 (E.D.N.C Mar. 31, 2021) (quoting <u>Young v. Gen. Motors Inv. Mgmt. Corp.</u>, 325 F. App'x 31, 33 (2d Cir. 2009)). Moreover, a "plan fiduciary's failure to reduce recordkeeping costs through negotiation or the solicitation of competing bids may in some

-14-

cases breach the duty of prudence." Id. at *10 (internal quotation marks omitted) (quoting Silva v. Evonik Corp., CV No. 20-2202, 2020 WL 12574912 (D.N.J. Dec. 30, 2020) (unpublished)).

The first two elements are clearly met. Plaintiffs have alleged the Plan is governed by ERISA, and each Defendant is a fiduciary with supporting factual allegations. (See Am. Compl. (Doc. 18) ¶¶ 1, 11, 28, 30, 34, 36.) The remaining issue for this court to resolve is whether Plaintiffs sufficiently allege Defendants breached their duties of prudence under ERISA, resulting in losses to the participants of the Plan.

ERISA requires fiduciaries to craft a plan's lineup "with the care, skill, prudence, and diligence . . . that a prudent man acting in a like capacity and familiar with such matters would use" in the same circumstances. 29 U.S.C. § 1104(a)(1)(B). "Courts 'measure fiduciaries' investment decisions and disposition of assets' against the prudent person standard." Falberg v. Goldman Sachs Grp., Inc., 19 Civ. 9910 (ER), 2020 WL 3893285, at *8 (S.D.N.Y. July 9, 2020) (quoting Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 419 (2014)). "In determining whether fiduciaries have breached their duty of prudence, we ask whether the individual trustees, at the time they engaged in the challenged [actions], employed the appropriate methods to investigate the merits of the investment

-15-

and to structure the investment." <u>Tatum v. RJR Pension Inv.</u> <u>Comm.</u>, 761 F.3d 346, 356 (4th Cir. 2014).

Courts in this circuit have found that a breach of fiduciary duty claim was plausibly alleged when the plaintiffs alleged a plan's recordkeeping and administrative fees were more expensive than similar plans' expenses for comparable services. <u>See</u> <u>Turpin v. Duke Energy Corp.</u>, CIVIL ACTION NO. 3:20-CV-00528-KDB-DSC, 2022 WL 287548, at *2 (W.D.N.C. Jan. 31, 2022) (denying motion to dismiss when "Plaintiffs have alleged that Plan participants paid excessive record keeping and account management fees (albeit with a quite modest level of specificity as noted by Defendants) and failed to adequately monitor the expenses charged to Plan participants"). Plaintiffs here allege a failure to utilize a cheaper investment option when Defendants did not select similar funds with cheaper recordkeeping fees. (<u>See</u> Am. Compl. (Doc. 18) ¶¶ 114–17.)

Defendants make several arguments in support of dismissal. First, Defendants argue that "the Plan's Form 5500 makes clear that the compensation to Transamerica . . . is not just for recordkeeping . . . but also includes investment management." (Defs.' Br. (Doc. 22) at 25 (citing Doc. 23-16 at 35).) Defendants argue the service codes assigned to Transamerica and TIAA reflect the recordkeepers were paid not only for

-16-

recordkeeping services but also for investment management services; they further rely on the Department of Labor's website in support. (Id. at 25-26.)

At the motion to dismiss stage, "[c]onsideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is 'integral to and explicitly relied on in the complaint,' and when 'the plaintiffs do not challenge [the document's] authenticity.'" Zak v. Chelsea Therapeutics Int'l., Ltd., 780 F.3d 597, 606-07 (4th Cir. 2015) (alteration in original) (quoting Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004)). Courts can take judicial notice of facts from public records without converting the motion to dismiss into one for summary judgment. See id. at 607. But "when a court considers relevant facts from the public record at the pleading stage, the court must construe such facts in the light most favorable to the plaintiffs," id., and courts should not consider the contents of a public record as an established fact contradicting the complaint, see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557-58 (4th Cir. 2013) (holding archived video footage of a city council's meeting was not a public record).

Even assuming the Department of Labor's website is a public record of which a court can take judicial notice, Defendants ask

-17-

this court to use the information on that website to contradict the allegations in Plaintiffs' Amended Complaint. (See Defs.' Br. (Doc. 22) at 25-26.) This court declines to make such a factual inquiry at this stage. See Smith v. Shoe Show, Inc., 1:20CV813, 2022 WL 583569, at *5 (M.D.N.C. Feb. 25, 2022) ("Defendants' argument raises factual questions and is thus premature."). "On a motion pursuant to Rule 12(b)(6), the court's task is to test the legal feasibility of the complaint without weighing the evidence that might be offered to support or contradict it." Clatterbuck, 708 F.3d at 558.

Second, Defendants argue that Plaintiffs compare the combined direct and indirect compensation paid to the Plan's recordkeeper with only the direct compensation paid to comparable plans' recordkeepers, "making the comparison alleged in the [Amended Complaint] meaningless." (Defs.' Br. (Doc. 22) at 27.) Plaintiffs allege the Plan's average recordkeeping fees of $110-$141 per participant, per year lack prudence in light of allegedly lower industry-standard fees. (Am. Compl. (Doc. 18) ¶ 109.) Plaintiffs allege Defendants should have been able to obtain record keeping fees of just $20-$30 per participant, per year. (Id. ¶ 114.)

This court finds Plaintiff's allegations (comparing fees paid to the Plan's recordkeeper to only direct fees paid to

-18-

similar plans' recordkeepers) fail to plausibly allege imprudence. Plaintiffs contend that imprudence can be inferred from the comparison between the direct recordkeeping and administrative costs of similarly sized plans with the recordkeeping and administrative fees Plan participants pay. (Id.) However, the Amended Complaint notes that these "expenses can either be paid directly from plan assets, or indirectly by the plan's investments in a practice known as revenue sharing." (Id. ¶ 103.)

This court agrees with Defendants that Plaintiffs' comparison to compares direct and indirect compensation to only direct recordkeeping fees in comparable plans. For example, Plaintiffs allege that the DHL Retirement Savings Plan paid $483,191 in total recordkeeping fees. (Id. ¶ 114.) However, DHL's Form 5500 shows that the $483,191 figure represents only direct compensation. (Doc. 24-4 at 7.)[5] Plaintiffs have attempted

---

[5] This court may consider the Plan's Form 5500s as well as those of other Plans alleged in the Amended Complaint. Those filings are "integral to and explicitly relied on in the [Amended] [C]omplaint and . . . Plaintiffs do not challenge [their] authenticity." Phillips, 190 F.3d at 618. Plaintiffs reference the Plan's Form 5500s repeatedly, as well as those of other Plans mentioned in the Amended Complaint. (E.g., Am. Compl. (Doc. 18) ¶¶ 24, 38, 56, 71, 98, 109.) Additionally, the filings may be considered because "[i]n reviewing a 12(b)(6) dismissal, [courts] may properly take judicial notice of matters of public record." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Here, the Form 5500s are unquestionably matters of public record. They are filed with the United States Department of Labor and are publicly available online. U.S. Dep't of Labor, Form 5500 Search, EFAST, https://www.efast.

to allege imprudence through an "apples-to-oranges" comparison when an "apples-to-apples" comparison is necessary. <u>Mator v. Wesco Distrib., Inc.</u>, 2:21-CV-00403-MJH, 2021 WL 4523491, at *7 (W.D. Pa. Oct. 4, 2021) ("Plaintiffs' mere price tag to price tag comparison, accompanied by conclusory allegations and lack of detail as to the categories of fees, does not sufficiently plead a breach of Duty of Prudence.").

However, this court finds Plaintiffs' allegation that Fidelity paid recordkeeping fees of $14-$21 does not warrant dismissal. Plaintiffs allege that "Fidelity – a recordkeeper for hundreds of plans – stipulated . . . that a Plan with tens of thousands of participants and over a billion dollars in assets could command recordkeeping fees as low as $14-21." (Am. Compl. (Doc. 18) ¶ 115.) Defendants argue Plaintiffs' "price tag to price tag to price tag comparison" does not plausibly suggest breach of fiduciary duty. (Defs.' Br. (Doc. 22) at 28.) While other courts have rejected such allegations, <u>see</u> <u>Johnson v. PNC Fin. Servs. Grp., Inc.</u>, 2:20-CV-01493-CCW, 2021 WL 3417843, at *4 (W.D. Pa. Aug. 3, 2021), this court declines to determine whether Fidelity is an appropriate benchmark to suggest imprudence at this early stage of the proceedings. Other courts in this circuit have recognized that "[c]ourts have specifically

dol.gov/5500search/ (last visited Sept. 8, 2022) (enter "Wake Forest University Baptist Medical Center" in "Sponsor Name" field).

held that the determination of the appropriate benchmark for a fund is not a question properly resolved at the motion to dismiss stage." <u>In re</u> <u>MedStar ERISA Litig.</u>, Civil Action No. RDB-20-1984, 2021 WL 391701, at \*6 (D. Md. Feb. 4, 2021). Recognizing a benchmark determination as a factual inquiry not proper at the motion to dismiss stage, these courts treat Plaintiffs' allegations as true in determining whether Defendants were imprudent. <u>See</u> <u>id.</u> This court finds that analysis persuasive and will do the same at this preliminary stage. Accordingly, Defendants' argument as to Plaintiffs' allegation concerning Fidelity is unpersuasive.

Third, Defendants argue that Plaintiffs' recordkeeping allegations fail to state an imprudence claim because Plaintiffs rely on an NEPC report, which is not alleged to be comparable to the Plan in this case. (Defs.' Br. (Doc. 22) at 28–29.) Plaintiffs allege that the NEPC report surveyed "various defined contribution plan fees;" "[t]he average plan had $1.4 billion in assets and 13,377 participants," and "[t]he median plan had $618 million in assets and 5,770 participants." (Am. Compl. (Doc. 18) ¶ 116.) Plaintiffs further allege the NEPC report "found that the majority of plans with over 15,000 participants paid, on average, slightly over $40 per participant in recordkeeping, trust and custody fees." (<u>Id.</u> ¶ 117.) Like those plans surveyed

-21-

in the NEPC report, "the Plan had tens of thousands of participants," which, according to Plaintiffs, "ma[de] it eligible for some of the lowest fees on the market." (Id. ¶ 118.) However, participants paid an average of $110-$141 in recordkeeping fees, (id. ¶ 109), as compared to the $40 in fees plans paid in the NEPC report, (id. ¶ 117).

Defendants argue that the NEPC report is not an appropriate comparator because "[n]o NEPC plan is identified as having more than one recordkeeper . . . in stark contrast to the Plan." (Defs.' Br. (Doc. 22) at 28.) Thus, "[t]he NEPC report has 'no connection to the question of whether this Plan could have obtained lower recordkeeping fees for the services provided by' Transamerica and TIAA." (Id. at 28-29 (quoting Kong v. Trader Joe's Co., No. CV 20-05790 PA (JEMx), 2020 WL 7062395, at *6 (C.D. Cal. Nov. 30, 2020), rev'd, No. 20-56415, 2022 WL 1125667 (9th Cir. Apr. 15, 2022)).) Defendants briefing cited no persuasive authority that the alleged comparator must be identical to Plaintiffs' plan; in fact, the one case relied on by Defendants in support of that argument was reversed by the Ninth Circuit. See Kong, 2022 WL 1125667. This court finds Plaintiffs have sufficiently alleged facts tending to show Plaintiffs' Plan recordkeeping fees were excessive in light of

similarly sized plans' recordkeeping fees, as shown in the NEPC report.

Finally, Defendants criticize Plaintiffs' allegation concerning Defendants' failure to regularly conduct a request for proposal ("RFP"). (Defs.' Br. (Doc. 22) at 29.) Plaintiffs allege: "[t]here is little to suggest that Defendants conducted a RFP at reasonable intervals . . . to determine whether the Plan could obtain better recordkeeping and administrative fee pricing from other service providers." (Am. Compl. (Doc. 18) ¶ 107.) Defendants argue this allegation is speculative. (Defs.' Br. (Doc. 22) at 29.) This court disagrees. Plaintiffs allege— perhaps somewhat inartfully—that Defendants failed to regularly conduct an RFP. That is sufficient to plausibly allege imprudence, as this court previously found in <u>Kruger v. Novant Health, Inc.</u>, where "Plaintiffs state[d] a plausible claim that the failure to monitor . . . recordkeeping fees rendered their judgment imprudent." 131 F. Supp. 3d 470, 478-79 (M.D.N.C. 2015).

In sum, although Plaintiffs' allegations comparing the total recordkeeping fees they paid as compared to only the direct fees paid to other recordkeepers is an inappropriate and irrelevant comparison, this court nevertheless finds Plaintiffs have sufficiently and plausibly alleged that the Plan's

-23-

recordkeeping fees were excessive compared to the services it
provided. (Am. Compl. (Doc. 18) ¶ 118 ("[T]he Plan had tens of
thousands of participants making it eligible for some of the
lowest fees on the market. Moreover, . . . it had the leverage
to bargain for reasonable per participant recordkeeping and
administrative fees without utilizing revenue sharing[.]").)
Likewise, Plaintiffs have sufficiently and plausibly alleged
that Defendants failed to reduce recordkeeping costs via
negotiation or solicitation of competing bids. (Id. ¶ 107
("There is little to suggest that Defendants conducted a RFP at
reasonable intervals – or certainly at any time prior to 2015
through the present – to determine whether the Plan could obtain
better recordkeeping and administrative fee pricing from other
service providers.").) Accordingly, "[t]his claim ekes across
the plausibility line, and the court allows plaintiffs' claim of
imprudence regarding recordkeeping fees to proceed." Kendall,
2021 WL 1231415, at *10; see also Kruger, 131 F. Supp. 3d at 479
("[W]hile Defendants claim that Plaintiffs have not alleged
facts regarding why the amount of the recordkeeping fees are
excessive, the services provided, or how the fees charged to the
Plan were excessive in light of those services, this court finds
that those are the types of facts warranting discovery, and,
therefore, dismissal at this stage is not appropriate."). This

court will deny Defendant's motion to dismiss Plaintiffs' imprudence claim regarding excessive recordkeeping fees.

### 3. <u>Excessive Total Plan Costs</u>

Defendants also move to dismiss Plaintiffs' allegations that the total plan costs were excessive. (Defs.' Br. (Doc. 22) at 30.) Plaintiffs allege the total plan costs were unreasonable in light of the cost of comparable plans. (Am. Compl. (Doc. 18) ¶¶ 70-74.) Plaintiffs allege the Plan's ICI/BrightScope ranking in 2019, in addition to the median total plan cost for plans over one billion, shows that Defendants breached their duty of imprudence. (<u>Id.</u>)

Defendants argue Plaintiffs have failed to state a plausible claim for relief because Plaintiffs' benchmark—the ICI study—is not an appropriate benchmark. (Defs.' Br. (Doc. 22) at 30.) "Courts have held that where a plaintiff claims that a prudent fiduciary in like circumstances would have selected a different fund based on the cost or performance of the selected fund, the plaintiff must provide a 'sound basis for comparison—a meaningful benchmark.'" <u>MedStar</u>, 2021 WL 391701, at *6 (quoting <u>Meiners v. Wells Fargo & Co.</u>, 898 F.3d 820, 822 (8th Cir. 2018)). However, "determination of the appropriate benchmark for a fund is not a question properly resolved at the motion to dismiss stage." <u>Id.</u>

-25-

This court finds that Plaintiffs have plausibly stated an imprudence claim based on allegations of excessive total plan costs. In <u>MedStar</u>, the plaintiffs "alleg[ed] the aggregate amount of investment management fees paid by the Plan . . . was .46–.48% of its total assets, far in excess of the average total plan cost of .28% for comparable plans." <u>Id.</u> Based on that allegation, in addition to other allegations of imprudence, the court declined to dismiss the plaintiffs' breach of fiduciary duty claim. <u>See id.</u> Like the allegations in <u>MedStar</u>, Plaintiffs here allege "the total plan costs during the Class Period range from" .60%–.43%, as compared to "the median total plan cost for plans over 1 billion [of] .22%." (Am. Compl. (Doc. 18) ¶ 74.) This allegation suggests Defendants failed to exercise prudence, so this court will decline to dismiss Plaintiffs' allegations of excessive total plan cost.

In sum, this court will decline to dismiss Plaintiffs' breach of the fiduciary duty of imprudence claim (Count I) based on excessive investment management expenses, excessive recordkeeping fees, and total plan costs.

**B.  <u>Count II: Failure to Monitor</u>**

"A claim for the failure to monitor derives from and depends on an 'underlying breach of fiduciary duty cognizable under ERISA.'" <u>Kendall</u>, 2021 WL 1231415, at *11 (quoting <u>In re</u>

_Duke Energy ERISA Litig._, 281 F. Supp. 2d 786, 795 (W.D.N.C.
2003)). Thus, the "duty to monitor claim is only as broad as the
surviving prudence claim and is otherwise dismissed." _Id._ at *12
(internal quotation marks omitted) (quoting _Cunningham v.
Cornell Univ._, No. 16-cv-6525 (PKC), 2017 WL 4358769, at *11
(S.D.N.Y. Sept. 29, 2017)). Because this court has found
Plaintiffs' excessive fee allegations state a plausible
imprudence claim, _supra_ Section III.A, Plaintiffs' monitoring
claim survives as well. The duty to monitor requires that plan
fiduciaries "'systematic[ally] conside[r] all the investments
. . . at regular intervals' to ensure that they are
appropriate." _Tibble v. Edison Int'l_, 575 U.S. 523, 529 (2015)
(quoting A. Hess, G. Bogert, & G. Bogert, _Law of Trusts and
Trustees_ § 684, at 145-46 (3d ed. 2009)). In short, "a fiduciary
is required to conduct a regular review of its investment." _Id._
at 528.

Plaintiffs allege Defendants failed to adequately monitor
the Retirement Benefit Committee. (Am. Compl. (Doc. 28) ¶¶ 128-
34. Defendants first argue this claim fails because a failure-
to-monitor claim is not an independent ground for relief and
depends upon an underlying breach of fiduciary duty claim.
(Defs.' Br. (Doc. 22) at 31.) However, because this court has

found that Plaintiffs have stated a claim for breach of fiduciary duty, this argument fails.

Second, Defendants argue "[t]he co-fiduciary breach claim is unsupported by any factual allegations, merely parroting the language of the relevant statutory provision," and therefore should be dismissed. (Id.) This court disagrees and finds Plaintiffs have alleged sufficient facts plausibly suggesting a failure to monitor claim. Plaintiffs allege "[t]he Board Defendants and Wake Forest (the 'Monitoring Defendants') had the authority and obligation to monitor the Committee and was aware that the Committee had critical responsibilities as a fiduciary of the Plan." (Am. Compl. (Doc. 18) ¶ 129.) Plaintiffs allege Defendants breached this duty when they failed to have a system in place to monitor the performance of the Committee and instead "st[ood] idly by as the Plan suffered significant losses," when they "fail[ed] to monitor the processes by which the Plan's investments were evaluated and the Committee's failure to investigate the availability of identical lower-cost funds," and when they "fail[ed] to remove the Committee as a fiduciary" as the Committee continued to make imprudent decisions. (Id. ¶ 132.)

This court finds these allegations sufficient to state a claim for failure to monitor. "[A]t this stage in the litigation

-28-

'an analysis of the precise contours of the defendants' duty to monitor . . . is premature.'" <u>Jones</u>, 2021 WL 1226551, at *5 (quoting <u>In re M&T Bank Corp. ERISA Litig.</u>, No. 16-CV-375 FPG, 2018 WL 4334807, at *11 (W.D.N.Y. Sept. 11, 2018)). Moreover, this court remains mindful

> of the practical context of ERISA litigation. No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences. Thus, while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, [courts] must also take account of their limited access to crucial information. If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer. These considerations counsel careful and holistic evaluation of an ERISA complaint's factual allegations before concluding that they do not support a plausible inference that the plaintiff is entitled to relief.

<u>Braden</u>, 588 F.3d at 598; <u>accord</u> <u>Reetz v. Lowe's Cos.</u>, Civil Action No. 5:18-CV-00075-KDB-DCK, 2019 WL 4233616, at *3 (W.D.N.C. Sept. 6, 2019). Accordingly, this court will decline to dismiss Plaintiff's failure to monitor claim (Count II).

-29-

## IV. CONCLUSION

For the foregoing reasons, this court will deny Defendants' Motion to Dismiss, (Doc. 21).

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, (Doc. 21), is **DENIED.**

This the 21st day of September, 2022.

_____
United States District Judge